UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
NOWSHIN ALI, SONIA MONIR, RON CERRETA,
UNLOCAL, INC., and CATHOLIC MIGRATION
SERVICES,


          Plaintiffs,

     - against -                    **MEMORANDUM AND ORDER**

WILLIAM BARR, Attorney General of       20 Civ. 3337 (NRB)
the United States, and JAMES MCHENRY,
Director of the Executive Office of
Immigration Review (EOIR),


          Defendants.

------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Plaintiffs bring this action against the Attorney General of
the United States and the Director of the Executive Office of
Immigration Review ("EOIR"), alleging that defendants have
violated their rights in connection with the operation of the
Immigration Courts in New York City with respect to the removal
proceedings of non-detained aliens.  Before the Court is
plaintiffs' motion for a preliminary injunction, seeking to enjoin
defendants from enforcing filing deadlines or taking any adverse
actions in those proceedings based on litigants' failure to comply
with such deadlines until 45 days after all stay-at-home and social
distancing orders issued by New York State and New York City are

lifted.   For the following reasons, the plaintiffs' motion is denied.[1]

## I.   Background

We first summarize the relevant facts as drawn from the evidence submitted by the parties in connection with this motion. See Mullins v. City of New York, 626 F.3d 47, 52 (2d Cir. 2010) (holding that a court may rely on affidavits, depositions, sworn testimony, and hearsay evidence in considering a motion for a preliminary injunction).

### A.   Removal Proceedings

The Immigration and Nationality Act ("INA") Section 240 provides a formal process by which the deportability of an alien is decided.   The same Section grants the immigration judges authority to "conduct proceedings for deciding the inadmissibility or deportability of an alien."   8 U.S.C. § 1229a(a)(1).   In New York City, there are three Immigration Court locations: 26 Federal Plaza, 290 Broadway, and 201 Varick street (collectively, "New York Immigration Courts").   The immigration judges in all three locations preside over the removal proceedings of non-detained aliens.

Prior to a hearing before an immigration judge, the parties may file written submissions.   The Office of the Chief Immigration

---

[1]     This result was presaged at the conclusion of the oral argument on this motion, which was held on May 21, 2020.

Judge, upon instruction of the Attorney General of the United States ("Attorney General"), has published an Immigration Court Practice Manual ("Manual"),[2] which sets forth uniform procedures, recommendations, and requirements for practice before the Immigration Courts.  The Manual provides that a non-detained alien shall file her submissions 15 days before a master calendar hearing or an individual calendar hearing.  See Manual, App'x D.  However, this submission schedule is provided for "general guidance only," and "[t]he Immigration Judge has discretion to set deadlines for pre-decision filings."  Id. (emphasis in original).

B.   **New York Immigration Courts' Responses to COVID-19**

This lawsuit stems from the ongoing pandemic caused by COVID-19, which President Trump declared to be a national emergency on March 13, 2020.  To contain the spread of COVID-19, the Governor of New York issued an executive order, which became effective on March 20, 2020, requiring closure of all non-essential businesses.  This order has been extended a number of times and is currently set to expire on June 27, 2020.  However, if the New York City region meets certain public health and safety metrics prescribed by the Governor of New York, it can start the Phase One reopening pursuant to the guidelines issued by the Governor's Office, which is currently scheduled to take place on June 8, 2020.

---

[2]     The most up-to-date version of Manual, which was released on April 10, 2020, is available at: https://www.justice.gov/eoir/page/file/1258536/download.

In response to the COVID-19 outbreak, on March 17, 2020, the EOIR announced that hearings in all non-detained cases are postponed.  Since then, the EOIR has made multiple announcements, extending the periods of across-the-board postponements, each time providing at least 10-day notice.  Currently, hearings in all non-detained cases, except those in the cases pending before the Honolulu Immigration Court, are postponed through, and including, June 26, 2020.  The EOIR has published those announcements on its official website as well as its pages on Twitter and Facebook. The respective websites of New York Immigration Courts provide links to the EOIR's Twitter and Facebook pages in the "CLOSING INFORMATION" section.  See, e.g., Federal Plaza Immigration Court website, available at: https://www.justice.gov/eoir/new-york-federal-plaza-immigration-court.

In addition to postponing the hearings in non-detained cases, on March 31, 2020, the EOIR established temporary email accounts for the Immigration Courts across the country so that the parties could file their submissions electronically.  Prior to the pandemic, all submissions to the New York Immigration Courts were filed through mail or dropped off at the courthouses.  The electronic submissions had to comply with a number of requirements, including the file format and file size of 25 MB.[3]

---

[3]     The EOIR's system, however, does not preclude parties from making a submission exceeding 25 MB in size.  The parties simply have to split their submissions into multiple files, each of which does not exceed 25 MB in size.

On May 1, 2020, the Assistant Chief Immigration Judges, who oversee the operations of New York Immigration Courts,[4] issued a standing order for each of those Courts, imposing a three-month temporal filing limit on electronic filing and limiting electronic submission of documentary/evidentiary filings to 50 pages in a particular filing.  See ECF No. 17-2.  If any party wishes to file a submission for a case with hearing more than 3 months away or a filing exceeding 50 pages, he can still submit it by sending a hard copy to the applicable New York Immigration Court through mail.  Id.  On May 8, 2020, the Assistant Chief Immigration Judges issued another standing order, adjourning the filing deadlines for cases in which hearings have been adjourned due to COVID-19 to a date to be calculated pursuant to the Manual based on the rescheduled hearing date (i.e. 15 days in advance) unless otherwise established by the presiding immigration judge.  See ECF Nos. 33-2, 33-3 & 33-4.

C.  **Plaintiffs**

There are three individual plaintiffs and two organizational plaintiffs in this action.

First, plaintiffs Ali and Monir (collectively, "Alien Plaintiffs") are individuals who are subject to removal

---

[4]     The Assistant Chief Immigration Judge Carrie Johnson-Papillo oversees the operations of the Immigration Court located at 26 Federal Plaza, and the Assistant Chief Immigration Judge Kevin Mart oversees the operations of the Immigration Courts located at 290 Broadway and 201 Varick Street.

proceedings currently pending before the New York Immigration
Courts.  Ali's individual hearing was scheduled for May 19, 2020,
with a filing deadline of April 19, 2020.  On April 8, 2020, Ali's
attorney filed a motion to continue the hearing.  Immigration Judge
Golovnin, who is presiding over Ali's case, granted the motion on
April 14, 2020, and Ali's hearing has been adjourned to **December
10, 2021,** with the legal briefs to be submitted 60 days and
evidentiary submissions to be filed 30 days before the new hearing
date.  See ECF No. 33-1.  Monir's hearing was scheduled for May
15, 2020, with a filing deadline of April 14, 2020.  However,
Monir's hearing has been adjourned to **June 23, 2022.**

Second, plaintiff Cerreta is an attorney at the Immigration
Community Law Center of African Services Committee.  Cerreta is
representing a client whose hearing was scheduled for June 8, 2020,
but the hearing has been postponed.  Cerreta is also representing
a client whose individual hearing is scheduled for August 25, 2020,
with a filing deadline of July 27, 2020.  Anticipating that he
will not be able to meet this deadline, Cerreta states in his
declaration that he will likely file a motion to continue the
August 25, 2020 hearing but has not yet done so.

Lastly, plaintiffs UnLocal, Inc. ("UnLocal") and Catholic
Migration Services ("CMS") (collectively, "Organizational
Plaintiffs", and collectively with Cerreta, "Attorney Plaintiffs")
are non-profit organizations that represent clients in removal

proceedings before the New York Immigration Courts.  In response to COVID-19 outbreak, UnLocal and CMS have closed their offices, and their staffs are currently working from home.  According to UnLocal and CMS, their staffs are facing a number of challenges in working for their clients in a work-from-home environment, including lack of technology equipment and difficulty in efficiently communicating with the clients.  UnLocal and CMS have hearings scheduled for the remainder of 2020 in a few dozen of their cases.  They have filed motions to continue in some of those cases, most of which are still pending before the immigration judges.  So far, none of their motions to continue has been denied by an immigration judge.

## II.   Discussion

### A.   Legal Standard: Federal Rule of Civil Procedure 65(a)

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Resources Def. Council, Inc., 555 U.S. 7, 24 (2008).  "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Id. (internal quotation marks omitted).  "To receive a preliminary injunction, the plaintiff must show (1) a likelihood of success on the merits, (2) that the plaintiff is likely to suffer irreparable injury in the absence of an injunction, (3) that the balance of

hardships tips in the plaintiff's favor, and (4) that the public interest would not be disserved by the issuance of the injunction." Capstone Logistics Holdings, Inc. v. Navarrete, 736 F. App'x 25, 26 (2d Cir. 2008) (internal quotation marks omitted).  "The burden is even higher on a party . . . that seeks a mandatory preliminary injunction that alters the status quo by commanding some positive act, as opposed to a prohibitory injunction seeking only to maintain the status quo."  Cacchillo v. Insmed, Inc., 638 F.3d 401, 406 (2d Cir. 2011) (internal quotation marks omitted).  "A mandatory preliminary injunction should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief."  Id.

    B.   **Analysis**

        1.   Current Status of Non-Detained Removal Proceedings before the New York Immigration Courts

To place our discussion on the merits in context, we summarize the current status of non-detained removal cases pending before the New York Immigration Courts.  Pursuant to a series of EOIR's announcements between March 17 and May 29, 2020, providing at least 10-day advance notice, all hearings in non-detained cases scheduled on or before June 27, 2020 have been postponed.  Pursuant to the May 8, 2020 standing order, the filing deadlines corresponding to those hearings have been adjourned as well.  As

to the hearings currently scheduled for a date after June 27, 2020 but less than 3 months away, the parties can electronically submit motions—including a motion to continue a hearing—or any other submissions up to 50 pages to a temporary e-mail account established by EOIR.  For the filings that exceed 50 pages or are for hearings more than 3 months away, the parties can still submit them by mailing a hard copy to the applicable New York Immigration Courts.

### 2.   Subject Matter Jurisdiction

In evaluating the plaintiffs' motion for preliminary injunction, the Court must first examine whether it has subject matter jurisdiction.  "A motion for a preliminary injunction under Rule 65(a), or for a temporary restraining order under Rule 65(b), does not confer subject matter jurisdiction on the court."  Vis Vires Grp., Inc. v. Endonovo Therapeutics, Inc., 149 F. Supp. 3d 376, 383 (E.D.N.Y. 2016).  "Thus, as is true of civil actions generally, an independent basis for asserting federal question or diversity jurisdiction must be shown, in order for a court to grant preliminary relief."  Id. at 384.  Having carefully considered the arguments raised by the parties, the Court concludes that it lacks subject matter jurisdiction over the claims of individual plaintiffs or the authority to issue the requested preliminary injunction under multiple jurisdiction-stripping provisions in the Immigration and Nationality Act ("INA").  "Failure of subject

matter jurisdiction is not waivable and may be raised at any time by a party of by the court sua sponte." Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700 (2d Cir. 2000). "If subject matter jurisdiction is lacking, the action must be dismissed." Id. Consistent with this well-established doctrine, we dismiss the claims of individual plaintiffs in their entirety as well as the claims of organizational plaintiffs insofar as they are seeking a permanent injunction as specified in the Complaint because we lack subject matter jurisdiction over those claims.[5]

a)    **Alien Plaintiffs**

First, the Court dismisses all of the claims asserted by Alien Plaintiffs because it lacks subject matter jurisdiction over those claims on two distinct grounds.

First, the Alien Plaintiffs' claims have become moot because their hearings, and the corresponding filing deadlines, have been adjourned to the years 2021 and 2022, respectively.  "A case becomes moot when the issues presented are no longer 'live or the parties 'lack a legally cognizable interest in the outcome.'" New York City Emps.' Retirement Sys. v. Dole Food Co., Inc., 969 F.2d 1430, 1433 (2d Cir. 1992).  "When this occurs, the Constitution's case or controversy requirement [under the Article 3, Section 2] is not satisfied and a federal court lacks subject matter

---

[5]     In light of this ruling, the Court is uncertain as to whether there is any viable claim remaining in the case and would appreciate submissions by the parties on that issue.

jurisdiction over the action." Id. Although plaintiffs conceded at oral argument only to the extent that Alien Plaintiffs are no longer relevant to this motion, the adjournment of Alien Plaintiffs' hearings and the corresponding filing deadlines has mooted the Alien Plaintiffs' claims in their entirety because Alien Plaintiffs are not alleging any injury other than the issues associated with meeting the filing deadlines for the original hearing dates. See Compl. ¶¶ 73-74; 79-81.

Second, the Court is divested of subject matter jurisdiction over the Alien Plaintiffs' claims pursuant to Section 242(b)(9) of the INA, as amended by the Real ID Act of 2005. The Section, codified at 8 U.S.C. § 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, . . . , to review such an order or such questions of law or fact.

Section 242(a)(5) of the INA, codified at 8 U.S.C. § 1252(a)(5), in turn limits "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter." Together, Sections 1252(a)(5) and 1252(b)(9) channel all challenges by an

alien to removal orders and removal proceedings to the applicable court of appeals.  In this Circuit, whether a district court has jurisdiction over a claim involving removal proceedings despite the INA's jurisdiction-channeling scheme is determined under "substance of the relief" test.  Delgado v. Quarantillo, 643 F.3d 52, 55 (2d Cir. 2011).[6]

The decision by Judge Carter of this District in P.L. v. U.S. Immigration and Customs Enforcement, 19 Civ. 1336 (ALC), 2019 WL 2568648, at *3 (S.D.N.Y. June 21, 2019), is instructive on whether the Alien Plaintiffs' claims are jurisdictionally barred.  In P.L., aliens who were required to appear for removal proceedings and organizational plaintiffs representing detained immigrants brought an action challenging a policy of the U.S. Immigration and Customs Enforcement ("ICE") to produce detained immigrants for their removal proceedings through video teleconferencing.  Id. at *1. Based on the Supreme Court's plurality opinion in Jennings v. Rodriguez, 138 S.Ct. 830, 840 (2018), Judge Carter concluded that Section 1252(b)(9) stripped the court of subject matter jurisdiction over the plaintiffs' claims because the policy challenged by the plaintiffs was "part of the process by which .

---

[6]     That § 1252(b)(9) operates as a jurisdiction-channeling provision has been reaffirmed by the Supreme Court in a recent decision.  See Nasrallah v. Barr, No. 18-1432, 2020 WL 2814299, at *4 (June 1, 2020) ("In other words, a noncitizen's various challenges arising from the removal proceeding must be consolidated in a petition for review and considered by the courts of appeals.") (internal quotation marks omitted).

. . removability will be determined," and therefore, the plaintiffs' claims were ones "aris[ing] from" the removal proceedings. Id. at *3.

Applying Judge Carter's reasoning in P.L., which the Court finds persuasive, the Court concludes that it lacks subject matter jurisdiction over the Alien Plaintiffs' claims. The enforcement of filing deadlines in their immigration proceedings is part of the process by which the Alien Plaintiffs' removability will be determined. Accordingly, it is an issue arising from, and not collateral to, the removal proceedings. The fact that an alien can raise issues related to extensions on appeal, as plaintiffs conceded at oral argument, serves to cement the conclusion that the issues raised by the Alien Plaintiffs here are "part of the process by which . . . removability will be determined." Id. at *3. Thus, under the clear mandate of Sections 1252(a)(5) and 1252(b)(9), the propriety of such rulings is an issue to be considered by a court of appeals on a petition to review a final removal order.

b) **Plaintiff Cerreta**

The Court also dismisses all of the claims asserted by plaintiff Cerreta on the ground that he lacks standing under the Article III of the United States Constitution. "To establish that a case or controversy exists as to confer standing under Article III, a plaintiff must show that he has suffered or is likely to

13

suffer: (a) an "injury in fact", (b) that is "fairly traceable to the challenged action of the defendant", and (c) that the injury is "likely" be "redressed by a favorable decision" of the federal court.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The injury in fact element can be satisfied by showing "an invasion of a legally protected interest which is (a) concrete and particularize, and (b) actual or imminent, not conjectural or hypothetical."  Id.

In his declaration, Cerreta states that he has been quarantined in his home on the advice of his doctor, and he acknowledges that the individual hearing of his client, which was scheduled for June 8, 2020, has been adjourned.  See Cerreta Suppl. Decl. (ECF No. 39), ¶¶ 2, 4.  Another client of Cerreta has a hearing scheduled for August 25, 2020, with a filing deadline of July 27, 2020.  Id. at ¶ 6.  Cerreta posits that he "will likely file" a motion to continue that hearing.  Id.  Under the circumstances, Cerreta has failed to show that he is likely to suffer an injury in fact requisite for Article III standing.  Now that August 25, 2020 is within the 3-month temporal limitation imposed by the New York Immigration Courts, Cerreta can electronically file a motion to continue the August 25, 2020 hearing, which Cerreta does not claim he is unable to do.  To infer an injury in fact from these facts necessarily requires us to presume that the immigration judge, who is presiding over the

14

removal proceedings of Cerreta's client, would deny Cerreta's motion, if he chooses to file one. Nothing in the record supports such an inference.[7] Because any injury alleged by Cerreta is only hypothetical, which is insufficient to establish Article III standing, the Court dismisses all claims asserted by plaintiff Cerreta for the lack of subject matter jurisdiction.[8]

c) **Organizational Plaintiffs**

Turning to the Organizational Plaintiffs, the motion is denied because Section 242(f)(1) of the INA, codified at 8 U.S.C. § 1252(f)(1), divests this Court of subject matter jurisdiction to issue the requested preliminary injunction. Section 1252(f)(1) provides:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such party have been initiated.

---

[7]     If Cerreta chooses not to file a motion to continue the August 25, 2020 hearing, the Immigration Court would reasonably presume that the parties wish to proceed in his client's case as scheduled. Any injury to be incurred in that situation would not be "fairly traceable" to any action or inaction by defendants.

[8]     In the absence of a constitutional right to counsel in immigration proceedings, see Zheng v. U.S. Dep't of Justice, 409 F.3d 43, 46 (2d Cir. 2005), the particular circumstances of any attorney who chooses to represent aliens in immigration proceedings is beyond the scope of injunctive relief under any circumstances. Rather, those considerations are properly included in a continuance motion to be filed with the Immigration Court. This observation is not limited to Cerreta but is generally applicable to this case.

8 U.S.C. § 1252(f)(1) (emphasis added).  Section 1252(f)(1) is
unambiguous: a district court shall not have jurisdiction to issue
an injunction of general applicability that would interfere with
the operation of certain INA provisions.  The corollary is that
any classwide relief with respect to the operation of removal
proceedings is unavailable.  See Reno v. American-Arab Anti-
Discrimination Committee, 525 U.S. 471, 481 (1999) ("[Section
1252(f)] prohibits federal courts from granting classwide
injunctive relief against the operation of §§ 1221-1231.").

     Apparently aware of this jurisdictional bar, plaintiffs did
not file this case as a class action.  Nonetheless, plaintiffs
initially sought an injunction "prohibiting Defendants from
enforcing filing deadlines or taking any adverse actions in non-
detained New York City Immigration Court cases based on litigants'
failure or inability to comply with such deadlines."  Compl.
¶ 137(b); see also Pls.' Mem. of Law (ECF No. 24) at 30.  In
apparent response to defendants' arguments based on § 1252(f)(1),
plaintiffs, in their reply submission, narrowed their requested
injunctive relief to "the limited group of individual clients
currently represented by Plaintiffs CMS, UnLocal, and Ron
Cerreta."  Pls.' Reply (ECF No. 37) at 6.  This narrowing does not
make the relief sought any more permissible.  Regardless of
plaintiffs' effort to reduce the number of aliens to be covered by

the requested injunction, the relief sought remains impermissibly classwide in character and not individualized.[9]

       3.     <u>Assuming Arguendo that the Court Had Jurisdiction, the Requested Injunction Would Nevertheless Be Denied</u>

Even if there were jurisdiction, there are numerous other hurdles, which plaintiffs cannot overcome, that would militate against the granting of requested preliminary injunction.  First and foremost, plaintiffs would have to demonstrate "a clear or substantial likelihood of success on the merits," <u>North Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.</u>, 883 F.3d 32, 37 (2d Cir. 2018), because the injunction they are seeking is clearly a mandatory one.  It is beyond serious dispute that the requested relief would change the status quo from a case-by-case determination of a motion to continue a hearing with a presumptive 15-day advance filing of pre-hearing submissions to an across-the-board stay of the Organizational Plaintiffs' non-detained clients until 45 days after the lifting of stay-at-home and social

---

        [9]    Plaintiffs' reliance on the All Writs Act, codified at 28 U.S.C. § 1651, as the jurisdictional basis to issue the requested injunction is without merit.  The Act provides that the Court "may issue all writs necessary or appropriate in aid of [its] jurisdictions."  Because Section 1252(f)(1) has already divested the Court of subject matter jurisdiction to issue the requested injunction, the All Writs Act cannot confer the Court subject matter jurisdiction to issue such an injunction.  <u>See</u> <u>Penn. Bureau of Correction v. U.S. Marshal Serv.</u>, 474 U.S. 34, 43 (1985) ("The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling.").

distancing orders issued by New York State and New York City.  Such relief does not simply preserve the status quo.

Second, as framed, the requested injunction is impermissibly vague given the obvious uncertainty about its duration.  It is fundamental that "[i]njunctive relief should be narrowly tailored to fit specific legal violations." Waldman Pub. Corp. v. Landoll, Inc., 43 F.3d 775, 785 (2d Cir. 1994).  No end date for social distancing is apparent nor is the condition to its lifting within defendants' control.[10]

Third, while not briefed by the parties, the requested injunction raises an issue of federalism.  Can the operation of a federal tribunal that is responsible for addressing the exclusively federal issue of an alien's deportability be tied to the orders of a state and, even more problematically, a municipality?[11]

Fourth, plaintiffs are unable to establish, as required for granting of a preliminary injunction, an irreparable injury,

_____

[10]     For example, Phase II of the New York State's reopening plan, which presumably covers reopening of law offices, mandates that "[a] distance of at least 6ft. must be maintained amongst all individuals at all time, unless safety of the core activity requires a shorter distance." See New York State, Reopening New York, Office-Based Work Guidelines for Employers and Employees, available at: https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/OfficesSummaryGuidelines.pdf (last accessed June 3, 2020).
[11]     Raising this federalism issue is not to suggest that responsiveness of a federal tribunal to orders of state and local governments on a voluntary basis is not appropriate or even desirable.  However, an injunction that would tie its operations to state and local policies is a different matter.  The record unambiguously reveals that the Immigration Court system has responded to the orders that have emanated from the COVID-19 crisis, albeit not in the precise manner plaintiffs desire.

18

namely, "an injury that is not remote or speculative, but actual and imminent." <u>Tom Doherty Assocs. v. Saban Entertainment, Inc.</u>, 60 F.3d 27, 37 (2d Cir. 1995).

A preliminary question is whether the Organizational Plaintiffs have standing to assert their clients' interests in making this application. We have already concluded that this Court lacks jurisdiction to resolve an individual alien's claims concerning any challenges presented by the COVID-19 outbreak. Moreover, given the existence of a non-COVID affected mechanism to file a motion for a continuance and a statutorily prescribed mechanism to challenge any denial of such a motion, <u>see Sanusi v. Gonzales</u>, 445 F.3d 193, 199 (2d Cir. 2006), the Organizational Plaintiffs' clients do not face an unavoidable, irreparable injury.[12] [13]

To the extent that the Organizational Plaintiffs are seeking to assert claims on their own behalf, the current state of relevant circumstances renders the requested injunction unnecessary. The

---

[12]   At oral argument, plaintiffs conceded that, had their clients' motion to continue been denied before the COVID-19 outbreak, this Court would not have had subject matter jurisdiction over the challenge to that denial. <u>See</u> Oral Arg. Tr. 4-5. It is a well-settled principle that, "so long as Congress does not violate other constitutional provisions, its control over the jurisdiction of the federal court is plenary." <u>Patchak v. Zinke</u>, 138 S.Ct. 897, 906 (2018). Plaintiffs here do not suggest that any of the jurisdiction-stripping statutes discussed in prior sections are unconstitutional. Given the absence of any change in the relevant statutes, any suggestion that the Court's jurisdiction has been expanded since the COVID-19 outbreak is without merit.

[13]   The Court rejects the plaintiffs' arguments set out in the letter of May 29, 2020 (ECF No. 45). That letter raises various issues that are far outside the role of any court and thus cannot constitute the basis for a court-ordered relief.

EOIR has announced that hearings for all non-detained cases are postponed through June 27, 2020.  Also, the Assistant Chief Immigration Judges of the New York Immigration Courts issued on May 8, 2020 a standing order that explicitly adjourns the corresponding filing deadlines for all hearings postponed due to COVID-19.  The Organizational Plaintiffs acknowledge in their declarations that there are only a few dozen hearings scheduled for the coming months.  Moreover, they conceded at oral argument that they have filed motions to continue in several of their clients' cases and that none of those motions has been denied. See Oral Arg. Tr. at 13.  For any hearings less than three months away, if they have not already done so, counsel can electronically file a motion to continue.[14]

At bottom, it appears that the issue comes down to the Organizational Plaintiffs' frustrations with not getting decisions on their motions to continue as quickly as desired.  However, plaintiffs can point to no authority in the context of a civil proceeding that requires a judge to rule on any specific timetable— let alone one that is driven by an attorney's personal need for certainty.  The hollowness of this aspect of the Organizational Plaintiffs' complaint is reinforced by their apparent failure to

---

[14]    The Court does not find the three-month temporal limitation for electronic filing imposed by the New York Immigration Courts unreasonable.  The three-month temporal limitation is readily understandable as a measure to prevent overloading personnel and technical resources.

promptly file motions to continue as soon as a hearing becomes eligible for electronic filing.  Moreover, the existing record with respect to Alien Plaintiffs—namely, that their hearings have been adjourned to December 2021 and June 2022, respectively—as well as the absence of any outright denial of a continuance motion filed by the Attorney Plaintiffs undermine any suggestion of imminent harm.  Plaintiffs' speculation that their motions will be denied on this record is simply that: speculation.[15]

Finally, when an injunction is sought against the government, the balance of hardships and the public interest factors merge. Planned Parenthood of New York City, Inc. v. U.S. Dep't of Health and Human Servs., 337 F. Supp. 3d 308, 343 (S.D.N.Y. 2018).  In this regard, we agree with the observation of a sister court in another case involving the operations of the Immigration Courts in the wake of the COVID-19 outbreak.  "Where . . . the government has taken steps to craft policies to address the public health issues associated with COVID-19 while continuing to enforce the immigration laws, and where the [c]ourt is not certainly . . . well-positioned to second-guess those health and safety determinations, the public interest does not point in favor of granting injunction relief."  Nat'l Immigr. Project of Nat'l Law.

---

[15]    Plaintiffs rely solely on a conditional denial of a motion to continue in a case not involving any of the plaintiffs here.  See ECF No. 38-3.

Guild v. EOIR, No. 20 Civ. 852 (CJN), 2020 WL 2026971, at *12 (D.D.C. Apr. 28, 2020).

### III.   Conclusion

For the foregoing reasons, the Court denies the plaintiffs' motion for preliminary injunction.

**SO ORDERED.**


Dated:    New York, New York
          June 3, 2020

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE